IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

BEVERLY DUNCAN,

        **Plaintiff,**

        v.                                  No. CIV-13-1066 LAM

CAROLYN W. COLVIN, Acting Commissioner
of the Social Security Administration,

        **Defendant.**

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Plaintiff's *Motion to Reverse and Remand for Rehearing, With Supporting Memorandum (Doc. 18)*, filed May 24, 2014 (hereinafter "motion").   In accordance with 28 U.S.C. § 636(c)(1) and Fed. R. Civ. P. 73(b), the parties have consented to the undersigned United States Magistrate Judge to conduct all proceedings and enter a final judgment in this case.   *See* [*Docs. 7* and *8*].   On July 28, 2014, Defendant filed a response to the motion [*Doc. 19*], and, on August 9, 2014, Plaintiff filed a reply [*Doc. 21*].   The Court has considered Plaintiff's motion, Defendant's response, Plaintiff's reply, and the relevant law. Additionally, the Court has meticulously reviewed and considered the entire administrative record. [*Doc. 14*].   For the reasons set forth below, the Court **FINDS** that Plaintiff's motion should be **GRANTED** and the decision of the Commissioner of the Social Security (hereinafter "Commissioner") should be **REMANDED** for further proceedings consistent with this Memorandum Opinion and Order.

# I.   Procedural History

On August 4, 2010, Plaintiff filed applications for Supplemental Security Income (hereinafter "SSI") and Disability Insurance Benefits (hereinafter "DIB"), respectively, alleging that she became disabled on July 9, 2010.  [*Doc. 14-7* at 2-5 and 6-7, respectively].   Plaintiff stated that she became disabled due to "[l]ower disc protrusion sciatica."   [*Doc. 14-8* at 22].   The respective applications were denied at the initial level on December 9, 2010 (*Docs. 14-3* at 2 and *14-5* at 4-7 and 19), and at the reconsideration level on April 8, 2011 (*Doc. 14-5* at 10-13 and 14-16).   Pursuant to Plaintiff's request (*id.* at 17), Administrative Law Judge Ben Willner (hereinafter "ALJ") conducted a hearing on May 8, 2012.   [*Doc. 14-3* at 34-63].   At the hearing, Plaintiff was present, was represented by counsel and testified.   *Id.* at 36, 39-56, and 57-58.   In addition, Vocational Expert (hereinafter "VE"), Pam Bowman, was also present and testified.   *Id.* at 36 and 56-57, and 58-62.

On August 24, 2012, the ALJ issued his decision, finding that, under the relevant sections of the Social Security Act, Plaintiff was not disabled.   [*Doc. 14-3* at 19-33].   Plaintiff requested that the Appeals Council review the ALJ's decision (*id.* at 7), and, on September 19, 2013, the Appeals Council denied Plaintiff's request for review (*id.* at 2-6), which made the ALJ's decision the final decision of the Commissioner.   On October 30, 2013, Plaintiff filed her complaint in this case.   [*Doc. 1*].

# II.   Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of*

*Health & Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir. 1992)).   If substantial evidence

supports the ALJ's findings and the correct legal standards were applied, the Commissioner's

decision stands, and the plaintiff is not entitled to relief.   *See Langley v. Barnhart*,

373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004);

*Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003).   Courts should meticulously review the

entire record but should neither re-weigh the evidence nor substitute its judgment for that of the

Commissioner.   *Hamlin*, 365 F.3d at 1214; *Langley*, 373 F.3d at 1118.

"Substantial evidence is such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion."   *Langley*, 373 F.3d at 1118 (citation and quotation marks

omitted); *Hamlin*, 365 F.3d at 1214 (citation and quotation marks omitted); *Doyal*, 331 F.3d at 760

(citation and quotation marks omitted).   An ALJ's decision "is not based on substantial evidence

if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence

supporting it."   *Langley*, 373 F.3d at 1118 (citation and quotation marks omitted); *Hamlin*,

365 F.3d at 1214 (citation and quotation marks omitted).   While a court may not re-weigh the

evidence or try the issues *de novo*, its examination of the record as a whole must include "anything

that may undercut or detract from the ALJ's findings in order to determine if the substantiality test

has been met."   *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005) (citations omitted).

"The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the

ALJ]'s findings from being supported by substantial evidence."   *Lax v. Astrue*,

489 F.3d 1080, 1084  (10th Cir.  2007)  (citing  *Zoltanski v.  F.A.A.*,  372  F.3d  1195,  1200

(10th Cir. 2004)).

### III. Applicable Law and Sequential Evaluation Process

For purposes of DIB and SSI, a person establishes a disability when he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). In light of this definition for disability, a five-step sequential evaluation process (SEP) has been established for evaluating a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the SEP, the claimant has the burden to show that: (1) the claimant is not engaged in "substantial gainful activity;" and (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and either (3) the claimant's impairment(s) either meet(s) or equal(s) one of the "Listings" of presumptively disabling impairments; or (4) the claimant is unable to perform his "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261. At the fifth step of the evaluation process, the burden of proof shifts to the Commissioner to show that the claimant is able to perform other work in the national economy, considering his residual functional capacity (hereinafter "RFC"), age, education, and work experience. *Grogan*, 399 F.3d at 1261.

### IV.   Plaintiff's Age, Education, Work Experience, and Medical History; and the ALJ's Decision

Plaintiff was born on July 31, 1969. [*Docs. 14-3* at 39 and *14-7* at 2]. Plaintiff has held a job as a general manager at a restaurant. [*Doc. 14-8* at 23]. Plaintiff alleges that she is unable to work due to "[l]ower disc protrusion sciatica." *Id.* at 22. Plaintiff's medical records include:

two Consultative Examination Reports by Michael R. Pitts, Psy. D., one dated November 12, 2008, (*Doc. 14-11* at 3-6), and one dated August 31, 2010 (*id.* at 35-37); a Physical Residual Functional Capacity Assessment by Janice Kando, M.D., dated September 6, 2010 (*id.* at 38-45); a Medical Consultant's Review of Psychiatric Review Technique Form by John Gambill, M.D., dated October 13, 2010 (*id.* at 49-51); a Psychiatric Review Technique by Donald Gucker, Ph.D., dated December 6, 2010 (*Doc. 14-12* at 36-49); a Mental Residual Functional Capacity Assessment by Donald Gucker, Ph.D., dated December 6, 2010 (*id.* at 50-53); and two Case Analyses, one by David P. Green, M.D., dated March 30, 2011 (*Doc. 14-13* at 20), and one by Charles F. Bridges, Ph.D., dated April 7, 2011 (*id.* at 21). Where relevant, Plaintiff's medical records are discussed in more detail below.

At step one of the five-step evaluation process, the ALJ found that Plaintiff has not engaged in substantial gainful activity since Plaintiff's alleged disability onset date of July 9, 2010. [*Doc. 14-3* at 21]. At step two, the ALJ found that Plaintiff has the following severe impairments: "adjustment disorder, with depressed mood, posttraumatic disorder, and degenerative disc disease with a history of herniated disc." *Id.* At the third step, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meet or medically equal any of the Listings found in 20 C.F.R. § 404, Subpt. P, Appx. 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). *Id.* at 22-23.

Before step four, the ALJ determined that Plaintiff has the RFC to perform light work, except that she is limited to only occasionally climbing ramps and stairs, balancing, stooping, kneeling, crouching, and crawling, and she can never climb ladders, ropes, or scaffolds. *Id.* at 23. Plaintiff also must avoid concentrated exposure to vibration and hazards such as dangerous

machinery and unprotected heights, and she must perform work that requires only simple tasks, simple instructions, and work primarily involving things, rather than with people. *Id.* Finally, Plaintiff can maintain concentration, pace, and persistence for two hours at a time before taking a regularly scheduled break. *Id.* In support of the RFC finding, the ALJ stated that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms, and [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are credible to the extent they are consistent with the above [RFC] assessment." *Id.* at 25. The ALJ noted that, on May 10, 2012, Plaintiff's treating physician, Dr. Delahoussaye, "completed a form indicating limitations that would preclude all competitive work." *Id.* at 26. The ALJ stated that this form contradicts Dr. Delahoussaye's previous examination notes and is not supported by other credible evidence in the record, so the ALJ gave the opinion little weight. *Id.* The ALJ noted that Dr. Castillo opined that Plaintiff's impairments preclude full-time employment, but the ALJ stated that this opinion is not supported by other evidence in the record, and that Plaintiff did not seek mental health counseling until she began seeing Dr. Castillo on October 22, 2011, so the ALJ gave "Dr. Castillo's opinions less weight." *Id.* The ALJ further stated that "[s]ignificant weight is given to the opinions of the State Agency medical consultants who reviewed the medical evidence and found [Plaintiff] capable of the [ALJ's RFC assessment]." *Id.* At step four, the ALJ found that Plaintiff is unable to perform any past relevant work, so the ALJ proceeded to the fifth step. *Id.* at 27.

At the fifth and final step, the ALJ noted that Plaintiff was born on July 31, 1969, so she was 40 years old at the time of her alleged disability onset date, which is defined as a younger

individual between the ages of 18-49.   *Id.*   The ALJ noted that Plaintiff has at least a high school

education, and is able to communicate in English.   *Id.*   The ALJ stated that "[t]ransferability of

job skills is not material to the determination of disability because using the Medical-Vocational

Rules as a framework supports a finding that [Plaintiff] is 'not disabled,' whether or not [Plaintiff]

has transferable job skills."   *Id.* (citing Soc. Sec. Rep. 82-41 and 20 C.F.R. Part 404, Subpart P,

Appendix 2).   The ALJ found that, considering Plaintiff's age, education, work experience, and

RFC, jobs exist in significant numbers in the national economy that Plaintiff can perform.   *Id.*

The ALJ stated that he asked the VE "whether jobs exist in the national economy for an individual

with [Plaintiff's] age, education, work experience, and [RFC]," and the VE testified that such an

individual would be able to perform the following requirements of representative occupations:

assembler of electronics, office helper, and mail clerk, each of which is "light, unskilled" work.

*Id.* at 27-28.   The ALJ stated that "the [VE's] testimony is consistent with the information

contained in the Dictionary of Occupational Titles."   *Id.* at 28.   The ALJ concluded that

"[Plaintiff] is capable of making a successful adjustment to work that exists in significant numbers

in the national economy."   *Id.*   The ALJ, therefore, determined that Plaintiff was not disabled

within the meaning of the Social Security Act.   *Id.*

## V.   Analysis

Plaintiff makes the following arguments in her motion to reverse or remand: (1) the ALJ

erred in his consideration of the opinions of Plaintiff's treating physicians (*Doc. 18* at 10-15); and

(2) the VE's testimony was not consistent with the Dictionary of Occupational Titles (*id.*

at 15-16).   In response, Defendant argues that substantial evidence supports the ALJ's findings,

Case 2:13-cv-01066-LAM   Document 22   Filed 10/29/14   Page 8 of 15

the ALJ properly considered all of the medical opinions in the record, and the VE's testimony does not contradict the Dictionary of Occupational Titles, so the ALJ properly relied on the VE's testimony regarding jobs that Plaintiff could perform.   [*Doc. 19* at 4-11].

### A.   The ALJ's Consideration of Plaintiff's Doctors' Opinions

Plaintiff contends that the ALJ erred by disregarding the opinions of Plaintiff's treating physicians, Dr. Castillo and Dr. Delahoussaye.   [*Doc. 18* at 13-15].   In response, Defendant contends that the ALJ properly considered these doctors' opinions, stating that these opinions are inconsistent with other opinions in the record, and are inconsistent with the doctors' own treatment notes and Plaintiff's own statements.   [*Doc. 19* at 5-8].

When "evaluating the medical opinions of a claimant's treating physician, the ALJ must complete a sequential two-step inquiry, each step of which is analytically distinct."   *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011); *see also Pisciotta v. Astrue*, 500 F.3d 1074, 1077 (10th Cir. 2007).   First, the ALJ "should consider whether the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with the other substantial evidence in the record."   *Pisciotta*, 500 F.3d at 1077 (citations omitted).   If the answer to both these questions is "yes," then the ALJ "must give the opinion controlling weight."   If, however, "the treating physician's opinion is not entitled to controlling weight, the ALJ must then consider whether the opinion should be rejected altogether or assigned some lesser weight."   *Id.* When a treating physician's opinion is not given controlling weight, it is still entitled to deference and must be weighed using relevant factors such as: the length of treatment and frequency of examination, and the nature and extent of the treating relationship; the extent to which the opinion

is supported by relevant evidence, particularly medical signs and laboratory findings; the extent to which the opinion is consistent with the record as a whole; the doctor's specialization in the medical field upon which an opinion is given; and other factors tending to support or contradict the opinion.  *See* 20 C.F.R. §§ 404.1527(c), 416.927(c).  Although the "ALJ must evaluate every medical opinion in the record [recognizing that] the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional," ultimately, the ALJ's decision must contain "reasons that are sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."  *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) (citations and internal quotation marks omitted).

On May 10, 2012, Dr. Delahoussaye opined that Plaintiff: could lift and carry less than ten (10) pounds on an occasional basis; could stand, walk and sit less than two hours in an 8-hour day; would have to change positions every 15 minutes; must walk around for five (5) minutes every fifteen (15) minutes; would need the opportunity to shift at will from sitting or standing/walking; will sometimes need to lie down at unpredictable intervals during a work shift on a daily basis; can never twist, stoop (bend), crouch, climb ladders, kneel, crawl, or balance; has restrictions on reaching (including overhead) and pushing/pulling; must avoid all exposure to extreme cold, extreme heat, wetness, humidity, noise, fumes, odors, dusts, gases, poor ventilation, and other hazards such as machinery and heights.  [*Doc. 14-15* at 31-34].  Dr. Delahoussaye also opined that Plaintiff has additional medical impairments from psychological issues and stress, and anticipated that Plaintiff would be absent from work more than three times a month because of her

impairments or treatment.  *Id.* at 33.   He further opined that Plaintiff was not able to work full time.  *Id.*

On December 13, 2011, Dr. Castillo opined that Plaintiff has the following limitations: maintaining attention and concentration for extended periods; performing activities within a schedule, maintaining regular attendance, and being punctual and within customary tolerances; working in coordination with, or in proximity to, others without being distracted by them; completing a normal workday and workweek without interruptions from psychologically based symptoms, and performing at a consistent pace without an unreasonable number and length of rest periods; getting along with coworkers or peers without distracting them or exhibiting behavioral extremes.  *Id.* at 23-24.   On October 19,2 011, Dr. Castillo opined that Plaintiff has marked limitations in the ability to perform activities within a schedule and being punctual and maintaining regular attendance, and has moderate limitations in the ability to interact appropriately with the general public and the ability to get along with coworkers without distracting them or exhibiting extreme behaviors.  *Id.* at 26-28.   Dr. Castillo also opined that Plaintiff would have to be absent from work more than three times a month due to her impairments or treatment.  *Id.* at 27.

The ALJ stated that Dr. Delahoussaye's opinion "indicating limitations that would preclude all competitive work" (*Doc 14-3* at 26, citing *Doc. 14-15* at 31-34), "contradicts [Dr. Delahoussaye's] previous examination notes and is not supported by other credible evidence of record," so the ALJ gave this opinion "little weight" (*Doc. 14-3* at 26).   With regard to Dr. Castillo's opinions, the ALJ stated that "Dr. Castillo's [sic] limit[s] [Plaintiff] more

significantly than the other evidence of record, including her own activities[, would] support" (*Doc. 14-3* at 26, citing *Doc. 14-15* at 23-30).   The ALJ noted that Plaintiff testified that she receives over $400 per month in worker's compensation, but did not seek any mental health counseling until she began seeing Dr. Castillo on October 22, 2011, so the ALJ stated that "[a]s a result, I give Dr. Castillo's opinions less weight."   *Id.*

The ALJ's RFC determination fails to take into account Dr. Delahoussaye's opinions regarding Plaintiff's limitations in her ability to sit, stand, walk, climb, balance, kneel and crawl. For example, the ALJ determined that Plaintiff can perform light work, which requires standing or walking, off and on, for approximately 6 hours out of an 8-hour workday (*see* Soc. Sec. Rep. 83-10, 1983 WL 31251 at *6), and the ALJ provided no further restrictions on sitting, standing or walking in his RFC determination (*see Doc. 14-3* at 23).   This fails to take into account Dr. Delahoussaye's opinion that Plaintiff can only stand, walk and sit less than two hours in an 8-hour day.   *See* [*Doc. 14-15* at 31].   The ALJ's RFC determination also fails to take into account Dr. Delahoussaye's opinions that Plaintiff can never twist, stoop (bend), crouch, kneel, crawl, or balance, is limited in her abilities in reaching (including overhead) and pushing/pulling, and must avoid all exposure to extreme cold, extreme heat, wetness, humidity, noise, fumes, odors, dusts, gases, and poor ventilation.   *Compare* [*Doc. 14-3* at 23] *with* [*Doc. 14-15* at 32-33]; *see also* 20 C.F.R. §§ 404.1567(b), 416.967(b) ("[A] job is in [the light work] category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.").   The ALJ's RFC determination also does not take into account Dr. Castillo's opinions regarding Plaintiff's limitations on performing activities within a schedule,

maintaining regular attendance, and being punctual, or with completing a normal workday and workweek without interruptions from psychologically-based symptoms, and performing at a consistent pace without an unreasonable number and length of rest periods.   *Compare* [*Doc. 14-3* at 23] *with* [*Doc. 14-15* at 23-24 and 26-27].   The ALJ's RFC determination also fails to take into account the opinions of both Dr. Delahoussaye and Dr. Castillo that Plaintiff would have to be absent from work more than three times a month due to her impairments or treatment.   *Id.* at 27 and 33.

While the ALJ stated that these doctors' opinions contradict other evidence in the record, the ALJ fails to specifically state what other evidence in the record contradicts these opinions, other than noting that Dr. Green's case analysis supported a finding that Plaintiff is capable of light work, and that Dr. Gucker's Psychiatric Review Technique form and Mental RFC Assessment support a finding of unskilled work.   *See* [*Doc. 14-3* at 25-26].   The ALJ's conclusory statement that the opinions of Drs. Delahoussaye and Castillo are entitled to "little weight" and "less weight," respectively, without any explanation of which opinions are being assigned little weight, or what "less weight" means, fails to satisfy the requirement that the ALJ must adequately explain why a treating physician's opinion is not given deference, even when the opinion is found to not be entitled to controlling weight.   *See* Soc. Sec. Rep. 96-2p, 1996 WL 374188, at *4 (explaining that "[i]n many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight"); *see also Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th Cir. 2004) (explaining that an ALJ must give good reasons for the weight assigned to a treating physician's opinion so that a subsequent reviewer can clearly

analyze the appropriateness of the weight).   The ALJ's rejection of the majority of the opinions of

Drs. Delahoussaye and Castillo, without a clear explanation of how the treating physicians'

opinions were inconsistent with the other medical evidence presented in the record, is in violation

of the requirements regarding the deference that should be given treating physicians' opinions.

*See Hamlin*, 365 F.3d at 1219 (finding that the ALJ erred in failing "to sufficiently highlight how

the treating physician's evaluations were inconsistent with the other medical evidence presented in

the record"); and *Doyal v. Barnhart*, 331 F.3d 758, 762 (10th Cir. 2003) ("The treating physician's

opinion is given particular weight because of his unique perspective to the medical evidence that

cannot be obtained from the objective medical findings alone or from reports of individual

examinations, such as consultative examinations or brief hospitalizations.") (citation and internal

quotation marks omitted).   Defendant attempts to supply the missing evidence that conflicts with

the treating physicians' opinions (*see Doc. 19* at 6-7); however, this is an impermissible *post hoc*

rationalization.   *See Robinson*, 366 F.3d at 1084 (explaining that reviewing courts may only

evaluate an ALJ's decision "based solely on the reasons stated in the decision," and that it would

be improper for a reviewing court or the Commissioner to "supply[] possible reasons for giving

less weight to or rejecting the treating physician's opinion" after the fact) (citation omitted).

Finally, the Court also finds that the reason the ALJ gave for rejecting Dr. Castillo's opinion, at

least in part, which was that Plaintiff did not begin seeing Dr. Castillo until October 2011, is not

supported by the record because Plaintiff began seeing Dr. Castillo in October of <u>2010</u>.   *See*

[*Doc. 14-3* at 26 and *Doc. 14-15* at 29].   For the reasons stated above, the Court concludes that

the ALJ failed to comply with the legal requirements of *Pisciotta*, 500 F.3d at 1077, *Krauser*,

638 F.3d at 1330, and 20 C.F.R. § 404.1527(d)(2), in considering the opinions of Plaintiff's treating physicians, Drs. Delahoussaye and Castillo.   On remand, the ALJ should consider these opinions regarding Plaintiff's limitations in compliance with those legal requirements.

### B.   Plaintiff's Remaining Claims

Because the Court finds that Plaintiff's case should be remanded for further consideration of the opinions of Drs. Delahoussaye and Castillo, the Court finds that it is unnecessary to reach Plaintiff's claim regarding the VE's testimony, which the ALJ relied on at step five, because that claim may be affected by the ALJ's findings on remand.  *See Robinson*, 366 F.3d at 1085 (declining to reach the claimant's step-five claims because they may be affected by the ALJ's resolution of the case on remand) and *Lopez v. Astrue*, No. 09-2187, 371 Fed. Appx. 887, 889 and 892 n.6, 2010 WL 1172610 (10th Cir. March 29, 2010) (unpublished) (after finding that the ALJ erred by failing to articulate what weight she gave to the treating physicians' opinions, the Tenth Circuit declined to reach claims regarding the ALJ's reliance on the VE's testimony, the ALJ's credibility assessment, and the claimant's subjective complaints of pain, because those issues may be affected by the ALJ's treatment of the case on remand) (citing *Robinson*, 366 F.3d at 1085).

## VI.   Conclusion

For the reasons stated above, the Court **FINDS** that the Commissioner's decision should be remanded to properly consider the opinions of Drs. Delahoussaye and Castillo, as set forth above.

**IT IS THEREFORE ORDERED** that, for the reasons stated above, Plaintiff's *Motion to Reverse and Remand for Rehearing, With Supporting Memorandum (Doc. 18)* is **GRANTED**

15

and this case is **REMANDED** to the Commissioner for further proceedings consistent with this

Memorandum Opinion and Order.   A final order will be entered concurrently with this

Memorandum Opinion and Order.

        **IT IS SO ORDERED.**

*Lourdes a. Martinez*

**THE HONORABLE LOURDES A. MARTÍNEZ**
**UNITED STATES MAGISTRATE JUDGE**
**Presiding by Consent**